IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

U.S. *ex rel* ALAMO ENVIRONMENTAL,          )
INC. d/b/a ALAMO 1,                         )
                                            )
              Plaintiff,                    )
                                            )
v.                                          )          Case No. CIV-11-482-D
                                            )
CAPE ENVIRONMENTAL MANAGEMENT,              )
INC., *et al.*,                             )
                                            )
              Defendants.                   )

## **ORDER**

This matter comes before the Court for consideration of the motions for dismissal filed by

all individual defendants: the Motion to Dismiss of Defendants Rios, Caviness, Vallejo, Hernandez,

Blackmon, Flynn, and Sanchez [Doc. No. 40]; and the Motion to Dismiss of Defendant Blackmon

[Doc. No. 52].[1]  Plaintiff Alamo Environmental, Inc. ("Alamo") has responded in opposition to the

Motions, and the movants have replied.[2]  The Motions are thus at issue.

### **Factual and Procedural Background**

This action was originally brought under the Miller Act, 40 U.S.C. § 3131 *et seq*., by second-

tier subcontractors who performed work or provided materials for a federal construction project at

Altus Air Force Base.  Defendant Cape Environmental Management, Inc. ("Cape") was the general

or prime contractor for the project, and Defendant Lexon Insurance Co., as surety, provided the

---

[1]  The original motion was filed on behalf of Defendant Blackmon before he was served with process, so he filed a separate motion after service.  The later-filed motion, and Plaintiff's response, adopt and incorporate by reference the parties' original briefs.

[2]  As explained below, Alamo was initially named as a defendant, and brought a third party action against the individual defendants.  After subsequent developments resulted in the dismissal of the original plaintiffs, the remaining parties were re-designated and the caption of the case was changed.

payment bond.  Alamo was a first-tier subcontractor who entered into the second-tier subcontracts on which the suit was originally brought.  Alamo claimed to be entitled to payment from Cape for its work on the project, as well as any amount owed to Alamo's subcontractors, and with its answer, Alamo filed cross-claims against Cape and the surety.

Alamo also initiated a third party action against the individual officers and directors of Cape based on allegations that the corporation was suspended by the Oklahoma Secretary of State on November 19, 2007, and forfeited its right to transact business within the state.  Alamo further alleged that "Cape Officers and Directors are deemed under Oklahoma law as acting under a general partnership with regard to Cape's business affairs within the State of Oklahoma, and otherwise personally liable for all debts incurred by Cape from and after November 19, 2007, including the debts incurred in connection with the Project."  *See* Third Party Compl. [Doc. No. 32], ¶ 14.  In addition to the same allegations used to support its cross-claim against Cape, Alamo alleged that the individual defendants authorized Cape to conduct business within the state and to incur debts in the course of that business, including Cape's debts in connection with the project. *See id.* ¶¶ 13-14, 46. Because Cape was allegedly suspended from doing business at the time it incurred the debts, Alamo asserts:  "Pursuant to 68 O.S. § 1212(C), Cape Officers and Directors are personally liable, as partners, for the debts incurred by Cape . . . , even though Cape was recently reinstated by the Oklahoma Secretary of State."  *See id.* ¶¶ 47-48.

The individual defendants and their alleged positions with Cape are:  Fernando J. Rios, chief executive officer and chairman of the board of directors; Chris Caviness, senior vice president and director of risk management; Richard Vallejo, vice president, director, and treasurer; Juan Hernandez, secretary; Troy Blackmon, vice president; Leslie Brian Flynn, senior vice president, chief operating officer, assistant secretary, and director; and Wilfred G. Sanchez, director of

contracts and procurement, and facilities security officer.  Notably, the Third Party Complaint does not allege that any particular officer or director was personally involved in the project, or personally participated in Cape's dealings with Alamo.  Instead, Alamo's pleading states simply that "Cape and/or Cape Officers and Directors" engaged in the conduct that allegedly creates liability to Alamo and caused its damages.  *See id.* ¶¶ 19-25, 29-31.  According to Alamo's pleading, "Cape and/or Cape Officers and Directors" mismanaged the project, wrongfully refused to pay Alamo for its work, breached "their written and/or oral agreements," provided "false and misleading information" and inadequate designs and schedules, and caused Alamo to suffer damages due to project delays, increased costs, extra work, and expenses related to claims of subcontractors and suppliers.  *See id.* ¶¶ 33-34, 36-45.

Through compromise and settlement, the original plaintiff-subcontractors have been paid and dismissed from the case.  Upon joint motion of the remaining parties, Alamo has been denominated as Plaintiff, and all other parties are now denominated as Defendants.

### Defendants' Motions

Although not specified in the Motions, the movants seek dismissal of the Third Party Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  The movants assert that the Oklahoma statute on which Alamo relies for its action against Cape's officers and directors, which they refer to as a "door closing" statute, does not apply in a Miller Act case.[3]  Alternatively, the movants contend Alamo's action should be dismissed in

---

[3]  The Motion does not identify its procedural basis but cites Fed. R. Civ. P. 12 generally.  Perhaps because the movants argue in their supporting brief that subject matter jurisdiction is premised solely on the Miller Act, Alamo treats the Motion as one to dismiss for lack of jurisdiction.  However, the jurisdictional basis of any cognizable state-law claim is supplemental jurisdiction under 28 U.S.C. § 1367(a).  *See* Order of Aug. 1, 2011 [Doc. No. 30] at 1.  Alamo expressly invokes jurisdiction under the Miller Act and § 1367(a).  *See* Third Am. Compl. [Doc. No. 32], ¶ 10.  Thus, the Court does not understand the Motion to be based on
(continued...)

favor of arbitration, as provided by Alamo's written agreement with Cape and as argued in Cape's separate motion to dismiss.[4]

Alamo responds that its statutory claim is not barred by the Miller Act, which permits state law claims to be brought in the same action if they fall within supplemental federal jurisdiction conferred by 28 U.S.C. § 1367(a). Further, Alamo argues that the Motion ignores additional state common law claims for misrepresentation and negligence allegedly asserted against the individual defendants in the Third Party Complaint, also within the Court's supplemental jurisdiction. Finally, Alamo disputes the movants' ability to invoke the arbitration provision of the subcontract between Alamo and Cape because they were not signatories to the agreement.[5]

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the

---

[3](...continued)
an alleged lack of jurisdiction. Instead, as discussed further below, and as noted in Alamo's response to Defendant Blackmon's motion, the issue is more appropriately treated as one of federal preemption or preclusion based on an alleged conflict between federal and state laws. *See* Pl.'s Objection Mot. Dism. Def. Blackmon [Doc. No. 53] at 2.

[4] This motion, filed jointly by Cape and its surety, is addressed by a separate order.

[5] Alamo also asserts that the arbitration agreement is void and unenforceable for reasons argued in opposition to Cape's motion. In support of this assertion, Alamo simply incorporates the arguments presented in its brief opposing Cape's motion.

elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).  Also, a defense of federal preemption or preclusion, if apparent on the face of a complaint, may properly be decided under Rule 12(b)(6).  *See, e.g.*, *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1146 (10th Cir. 2009) (Copyright Act preempted state-law claims of unfair competition, unjust enrichment, and deceptive trade practices); *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1283-84 (10th Cir. 2008) (Securities Litigation Uniform Standards Act of 1998 precluded state-law securities claims).

## Discussion

### A.    Statutory Claim

Alamo seeks to hold the individual defendants liable for Cape's alleged debt to Alamo for work done on the project.  Alamo's cross-claim against Cape, and thus the third-party claim against its officers and directors, rests on contractual and *quantum meruit* theories.  *See* Third Party Complaint [Doc. No. 32], ¶¶ 37, 45; *see also* Answer and Cross-Claim [Doc. No. 7], at 10, ("Cross-Claim Against Cape and Lexon," ¶¶ 26, 34).  Both theories are available to a subcontractor seeking to recover under the Miller Act.  *See United States ex rel. C.J.C., Inc. v. Western States Mech. Contractors, Inc.*, 834 F.2d 1533, 1539 (10th Cir. 1987) (recognizing this principle as "well established").  The statute under which Alamo asserts a right of recovery from Cape's officers and directors is a provision of the Oklahoma Tax Code, which provides in full as follows:

> **Each trustee, director or officer of any such corporation, association or organization [that is suspended by an order of the Tax Commission], whose right to do business within this state shall be so forfeited, shall, as to any and all debts of such corporation, association or organization, which may be created or incurred with his or her knowledge, approval and consent, within this state after such forfeiture and before the reinstatement of the right of such corporation to do business, be deemed and held liable thereon in the same**

5

**manner and to the same extent as if such trustees, directors, and officers of such corporation, association or organization were partners.**  Any corporation, association or organization whose right to do business shall be thus forfeited shall be denied the right to sue or defend in any court of this state, except in a suit to forfeit the charter of such corporation, association or organization.  In any suit against such corporation, association or organization on a cause of action arising before such forfeiture, no affirmative relief shall be granted to such corporation, association or organization unless its right to do business in this state shall be reinstated as provided herein.  Every contract entered into by or in behalf of such corporation, association or organization, after such forfeiture as provided herein, is hereby declared to be voidable.

Okla. Stat. tit. 68, § 1212(C) (emphasis added).  According to the Oklahoma Supreme Court, the first sentence "holds [a corporation's] Officers personally liable for debts incurred with their knowledge, approval and consent even during the suspension of the corporation's license to do business within the state and even when suit is brought after reinstatement."  *See State Ins. Fund v. AAA Engineering & Drafting, Inc*., 863 P.2d 1218, 1221-22 (Okla. 1993).

Although only the first sentence of § 1212(C) is pertinent to Alamo's claim, the Court has quoted the full text of the provision because the remaining sentences – which deprive the suspended corporation of the right to sue or defend in court, and which may void contracts made by the corporation during its suspension – have led this type of state statute to be referred to a "door closing" statute.  In this case, the movants rely on case law holding that such statutes are ineffective to prevent a party in a Miller Act case from recovering on, or defending against, a claim for payment under the Act.  *See Aetna Cas. & Surety Co. v. United States ex rel. R.J. Studer & Sons*, 365 F.2d 997, 999 (8th Cir. 1966); *Hoeppner Const. Co. v. United States ex rel. Mangum*, 287 F.2d 108, 110 (10th Cir. 1960); *United States ex rel. Bernadot v. Golden West Const. Co*., 194 F. Supp. 371, 375 (D. Utah 1961).  In *Bernadot*, for example, a subcontractor sought to prevent a prime contractor, which was not licensed as a foreign corporation in Utah, from bringing a counterclaim regarding a federal project in Utah based on a Utah "door closing" statute restricting the rights of foreign

corporations that had failed to comply with state laws.  In rejecting this position, the district court

relied on the Tenth Circuit's decision in *Hoeppner*, which refused to bar a suit by a subcontractor

as mandated by a similar Colorado statute, reasoning as follows:  "If a sub-contractor's recovery

cannot be diminished by reason of state statutes such as the one here involved because his rights

granted by a federal statute will not be permitted to be conditioned by state law, they should not be

permitted to be enlarged for similar reasons."  *See Bernadot*, 194 F. Supp at 375.

Alamo argues, correctly, that none of the cases cited by the movants involved a statutory

provision similar to the one at issue in this case, shifting a suspended corporation's liability to its

officers and directors.  Thus, Alamo asserts that the cited cases are inapposite.  Alamo contends that

this Court should instead look to cases holding that the Miller Act is a remedial statute that was not

intended to provide an exclusive remedy.  Alamo cites, for example, *United States ex rel. Sunworks

Division of Sun Collector Corp. v. Insurance Co. of North America*, 695 F.2d 455, 458 (10th Cir.

1982), in which the court of appeals held that an unpaid second-tier subcontractor who could not

prevail on a Miller Act claim could recover on an alternative, state-law claim asserted under an

equitable theory.  The court relied on a statement by the Supreme Court that "the Miller Act was

designed to provide an alternative remedy to the mechanics' liens ordinarily available on private

construction projects."  *J.W. Bateson Co. v. United States ex rel. Bd. of Trustees*, 434 U.S. 586,

589-90 (1978) (internal quotation omitted).  The court of appeals reasoned that an equitable theory

of recovery, if proved, should be permitted where neither a Miller Act nor mechanics' lien claim was

available.  *See Sunworks*, 695 F.2d at 458.

The question presented in this case, however, is not the availability of an alternative theory

of recovery, but a state-created remedy for a Miller Act claim.  Notably, the case on which the court

of appeals relied, *J.W.Bateson*, held that the plaintiffs had no remedy under the Miller Act.  The

Supreme Court held that the language of the statute and congressional intent established that a labor union claiming a right to payment by a second-tier subcontractor had no right of recovery under the Act because it had no contractual relationship with the prime contractor or a first-tier subcontractor; the second-tier subcontractor's obligation to its employees or their representative did not fall within the statute's protection.  Thus, the teaching of *J.W. Bateson* is that the Miller Act, or federal case law interpreting it, determines the right to recovery on a Miller Act claim.

In the parties' briefs, they do not expressly argue the issue as one of federal preemption or, specifically, conflict preemption, which may occur "'when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Southwestern Bell Wireless Inc. v. Johnson County Bd. of County Comm'rs*, 199 F.3d 1185, 1190 (10th Cir. 1999) (quoting *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998). However, federal preemption was the underlying premise of controlling precedent on which the movants also rely, *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116 (1974).  In that case, the Supreme Court stated that "[t]he Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law." *Id*. at 127.  This statement was made in the context of considering liability for attorney's fees, as to which the Supreme Court found no "congressional intent to incorporate state law to govern such an important element of Miller Act litigation." *Id*.  Other courts have applied the same principle with regard  to other remedies.  *See United States ex rel. C.J.C., Inc. v. Western States Mech. Contractors, Inc.*, 834 F.2d 1533, 1541 (10th Cir. 1987) (holding that the availability of prejudgment interest in a Miller Act case was a matter of federal law); *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 764 (10th Cir. 1997) (same).  The Supreme Court reached its conclusion in *F.D. Rich* that state law could not authorize an award of attorney's fees in a Miller Act

8

case based on its finding of congressional intent with respect to suits that "are plain and simple commercial litigation" and because "the reasonable expectations of such potential litigants [who may have little or no contact with the state in which a federal project is located] are better served by a rule of uniform national application."  *See F.D. Rich*, 417 U.S. at 127, 130-31.

Similarly here, the Court finds that a rule of uniform application in Miller Act cases warrants the application of federal, rather than state-created, remedies to Alamo's Miller Act claims.  For the same reason that other federal courts have refused to apply "closing door" statutes in Miller Act cases, the Court finds that an additional remedy created by such a statute should not be available to expand the realm of potential defendants under the Miller Act.  Alamo's remedies under the Miller Act should not depend on the fact that the federal project was located in Oklahoma.

For these reasons, the Court finds that the individual officers and directors of Cape are entitled to dismissal of Alamo's Miller Act claims against them, and that, in light of the rationale supporting dismissal, leave to amend shall not be granted with respect to this claim.

**B.      Supplemental Common Law Claims**

Alamo contends the Third Party Complaint also states tort claims of misrepresentation and negligence against the officers and directors of Cape that should not be dismissed.  In their reply brief, the movants dispute this contention, arguing that no action, inaction, or neglect of duty is alleged by any particular officer or director of Cape.  The Court agrees.

Under the plausibility standard of *Twombly* and *Iqbal*, "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).  "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the

remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Id.* Under Oklahoma law, "corporate officers may be individually liable for their tortious conduct even if they are acting on behalf of the corporation and regardless of whether a corporation may be held vicariously liable for the torts of its officers and directors." *Smoot v. B & J Restoration Services, Inc.*, 279 P.3d 805, 814 (Okla. Civ. App. 2012). Assuming, without deciding, that a claim of misrepresentation or negligence could arise under the circumstances of this case, the Third Amended Complaint contains no factual allegation that would establish tortious conduct by any individually-named defendant for Alamo's alleged damages. In short, the Court finds that the Third Party Complaint wholly fails to state a tort claim against any officer or director of Cape.

Therefore, the movants are entitled to the dismissal of any common law tort claim purportedly asserted against them in the Third Party Complaint. However, a dismissal with prejudice to refiling is appropriate under Rule 12(b)(6) only where a complaint fails to state a claim and granting leave to amend would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Because the movants do not contend that amendment would be futile, the dismissal of Alamo's tort claims will be granted with leave to amend.

IT IS THEREFORE ORDERED that the Motions to Dismiss of Defendants Rios, Caviness, Vallejo, Hernandez, Blackmon, Flynn, and Sanchez [Doc. Nos. 40 & 52] are GRANTED. Plaintiff may file an amended complaint against these defendants within 14 days of this Order.

IT IS SO ORDERED this 24th day of September, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE