IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

U.S. *ex rel* ALAMO ENVIRONMENTAL,       )
INC. d/b/a ALAMO 1,                      )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )       Case No. CIV-11-482-D
                                         )
CAPE ENVIRONMENTAL MANAGEMENT,           )
INC., *et al.*,                          )
                                         )
            Defendants.                  )

## **O R D E R**

Before the Court is the Renewed Motion of Defendants Cape Environmental Management,

Inc. and Lexon Insurance Company to Dismiss the Cross-Claims of Alamo Environmental, Inc. in

Favor of Arbitration and to Enter a Stay of This Action [Doc. No. 31].  As a party to a written

contract containing an arbitration clause, Cape Environmental Management, Inc. ("Cape") seeks to

enforce the agreement pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and in the interest

of judicial economy, to stay the action as to the remaining parties pending the completion of the

arbitral proceeding.[1]  Plaintiff Alamo Environmental, Inc. ("Alamo") has responded in opposition

to the Motion, and the movants have replied.[2]  The Motion is thus fully briefed and at issue.

---

    [1]  When the Motion was filed, the action included parties who have now been dismissed, but this
request would still apply as to other parties who were not signatories to the agreement, such as Cape's surety,
Lexon Insurance Company.

    [2]  As explained below, Alamo was initially named as a defendant, but subsequent developments in
the case caused it to be realigned as the plaintiff.

**Factual and Procedural Background**

This action under the Miller Act, 40 U.S.C. § 3131 *et seq*., was originally brought by second-tier subcontractors who performed work or provided materials for a construction project at Altus Air Force Base.  Cape was the general or prime contractor for the project, and Alamo was a first-tier subcontractor who entered into the second-tier subcontracts on which the suit was brought.  Because Alamo claimed to be entitled to payment from Cape for its work on the project, as well as amounts owed to Alamo's subcontractors, Alamo filed cross-claims against Cape and the surety.  As a result of a compromise and settlement between the second-tier subcontractors and Cape, the original plaintiffs were dismissed from the action.  At the request of the remaining parties, the original defendants were re-designated in accordance with the cross-action, and the caption of the case was changed to reflected the new designations, as set forth above.[3]

**Motion to Dismiss in Favor of Arbitration**

By the Motion, Cape invokes a dispute resolution provision of its written subcontract with Alamo.  The provision first requires Alamo to seek any additional payment or additional time for performance by giving written notice of a claim and allowing Cape 90 days to determine its merit.  After that time, if unsatisfied with Cape's resolution, Alamo may proceed with procedures provided in the "Disputes" section, in pertinent part as follows:

> As to all other unresolved disputes, controversies or Claims between Cape and Subcontractor, the parties shall first seek to resolve them by good faith negotiation lasting at least ten days involving senior management of the Parties.  As to disputes, controversies, or Claims between Cape and Subcontractor which remain unresolved after such good faith negotiation, Cape shall determine whether they shall be settled in accordance with the rules of the American Arbitration Association ("AAA"),

---

[3] Early in the case, Alamo was also permitted to file a third-party action.  After the realignment, the third-parties were re-designated as additional defendants.  These parties were dismissed on September 24, 2012, with leave for Alamo to amend.

before one or three arbitrators in a particular location, or through litigation in a court
of competent jurisdiction, with or without a jury.  Provided, upon Subcontractor's
request by written notice, Cape shall within twenty days provide notice of such
decision to Subcontractor.  (If Cape fails to provide such notice, the dispute shall be
resolved by AAA arbitration before one arbitrator in Walnut Creek, California.)

*See* Defs.' Renewed Mot. Dism., Ex. 1 [Doc. No. 31-1], Subcontract, attach. C, ¶ 44.0(B).  Alamo

contends this arbitration agreement is unenforceable because it is illusory or void for lack of

mutuality.  Alternatively, Alamo contends: 1) the provision should not be enforced because it is

ambiguous and should be construed against Cape as the drafter; 2) Cape waived its right to

enforcement; and 3) Cape failed to comply with a condition precedent to arbitration.

**Discussion**

**A.     Validity of the Arbitration Agreement**

The Federal Arbitration Act provides that "an agreement in writing to submit to arbitration

an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as

exist at law or in equity for the revocation of any contract."  *See* 9 U.S.C. § 2.  The Act "reflects the

fundamental principle that arbitration is a matter of contract'" and like other contracts, arbitration

agreements "may be invalidated by generally applicable contract defenses."  *See Rent-A-Center,*

*West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010) (internal quotation omitted).  When a party to

an arbitration agreement challenges its validity, "the federal court must consider the challenge before

ordering compliance with that agreement." *Id*. at 2778.  In resolving such a challenge, federal courts

may apply state law principles that govern the validity, revocability, and enforceability of contracts.

*Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996).  An agreement may not be

invalidated, however, by "defenses that apply only to arbitration or that derive their meaning from

the fact that an agreement to arbitrate is at issue" or by "state-law rules that stand as an obstacle to

the accomplishment of the [Act's] objectives."  *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct.

1740, 1746, 1748 (2011).  In this case, Alamo's challenge to the validity and enforceability of the

arbitration provision of the subcontract is a matter that this Court must address as a "gateway" issue

of arbitrability.  *See Rent-A-Center*, 130 S. Ct. at 2777.

Alamo's assertion that the arbitration agreement is illusory or lacks mutuality is based on

cases decided by Oklahoma and federal courts.[4]  The Tenth Circuit has held "that an arbitration

agreement allowing one party the unfettered right to alter the arbitration agreement's existence or

its scope is illusory."  *See Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002).

If there are sufficient restrictions on a party's right to modify or cancel the arbitration agreement,

however, the agreement is not illusory and is enforceable.  *See Hardin v. First Cash Fin. Serv., Inc.*,

465 F.3d 470, 479 (10th Cir. 2006).  These principles are consistent with Oklahoma law.  *See id.*;

*see also Thompson v. Bar-S Foods Co.*, 174 P.3d 567, 575 (Okla. 2007) (arbitration agreement in

personnel policy that the employer could unilaterally change without notice lacked consideration

and was illusory; citing *Hardin* "approvingly" as an accurate statement of Oklahoma law).

In this case, Alamo contends the arbitration agreement is illusory or lacks mutuality because

it provides Cape a unilateral right to "determine whether [disputes] shall be settled in accordance

with the rules of the American Arbitration Association ('AAA'), . . . or through litigation in a court

of competent jurisdiction."  *See* Defs.' Renewed Mot. Dism., Ex. 1 [Doc. No. 31-1], Subcontract,

attach. C, ¶ 44.0(B).  The sole limitation on that right arises if the subcontractor requests a decision

regarding Cape's election and Cape fails to provide notice within 20 days; in that situation, "the

dispute shall be resolved by AAA arbitration before one arbitrator in Walnut Creek, California."

*Id.*

---

    [4] Both parties assume that Oklahoma law would govern the contractual arguments raised by Alamo.
The Court accepts the accuracy of this assumption, as no choice-of-law issue is raised by a party.

Upon consideration of this provision, the Court finds it to be distinguishable from ones that have been found to be illusory arbitration agreements. In those cases, the parties agreed in writing to arbitrate disputes, but one party retained the right to amend or terminate the agreement at any time in the future, rendering it no agreement at all. Alamo does not complain that the provision in this case is changeable at the whim of Cape but, instead, that the obligation to arbitrate disputes is not mutual or reciprocal. Cape retains the right to decide whether to arbitrate or litigate a particular dispute, but Alamo does not have the same choice of forums. If Cape makes a timely election, only Alamo is contractually bound to arbitrate its claims. Under these circumstances, the problem is not that the agreement is illusory, but that it lacks mutuality of obligation or remedy.

The Court finds no requirement of Oklahoma law that a contractual obligation to arbitrate disputes must be mutual.[5] Applying Oklahoma law to a franchise agreement, a federal appellate court has concluded "that the Oklahoma Supreme Court would hold that mutuality in arbitration clauses is not required." *See Baker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir. 1998). The arbitration agreement in that case excepted disputes or claims regarding monies owed to the franchisor; according to the franchisees, the exception effectively "permitted [the franchisor] to litigate any conceivable claim, while they must arbitrate their claims." *Id.* After examining Oklahoma case law and general contract principles, including the Restatement (Second) of Contracts, the Eighth Circuit concluded that "under Oklahoma law, mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration."

---

[5] The only Oklahoma case law on which Alamo relies is an unpublished decision of the Oklahoma Court of Civil Appeals. Under Oklahoma law, this decision has no precedential or persuasive value, and Alamo's reliance on it is improper. *See* Okla. Stat. tit. 12, ch. 15, app. 1, Okla. Sup. Ct. R., Rule 1.200 ("Because unpublished opinions are deemed to be without value as precedent and are not uniformly available to all parties, opinions so marked ['Not for Official Publication'] shall not be considered as precedent by any court or cited in any brief or other material presented to any court, except to support a claim of res judicata, collateral estoppel, or law of the case.")

*Id*. at 792.  This conclusion is supported by the weight of authority in other jurisdictions as well.

*See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180 (3rd Cir. 1999) ("Modern contract law

largely has dispensed with the requirement of reciprocal promises, however, provided that a contract

is supported by sufficient consideration.") (citing Restatement (Second) of Contracts § 79, and

discussing cases); *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 451-52 (2d Cir. 1995) (same).

Further, because only generally applicable contract principles may render an arbitration agreement

unenforceable, this Court is bound by Tenth Circuit precedent holding that "[u]nder the law of

Oklahoma the requirement of mutuality is basically a requirement that a contract be supported by

consideration."  *See R. S. Mikesell Assoc. v. Grand River Dam Auth*. 627 F.2d 211, 213 (10th Cir.

1980); *see also Langdon v. Saga Corp*., 569 P.2d 524, 526-27 (Okla. Civ. App. 1976) (same).  In

this case, there is no question the subcontract was supported by consideration.

　　　　For these reasons, the Court finds that the fact Cape retained the right to decide whether a

dispute would be arbitrated does not render Alamo's promise to arbitrate illusory, void for lack of

mutuality, or otherwise unenforceable based on generally applicable contract principles.

**B.　　　Contract Interpretation**

　　　　Generally, the courts will enforce arbitration agreements according to the terms of the

parties' contract, since arbitration "is a matter of consent, not coercion."  *Volt Info. Sciences, Inc.*

*v. Board of Trustees*, 489 U.S. 468, 479 (1989).  Here, Alamo asserts that "several ambiguities

within paragraphs 43.0 and 44.0" of the subcontract create doubt about whether Alamo's claim for

additional payment is subject to mandatory arbitration.  *See* Alamo's Resp. Br. [Doc. No. 35] at 11.

In particular, Alamo argues that paragraph 43.0 provides a "Claims" process for payment disputes,

which according to paragraph 44.0(A) must be completed before utilizing the "Disputes" process

in paragraph 44.0(B) (including arbitration), but the first sentence of paragraph 44.0(B) states that

its procedures apply to "all <u>other</u> unresolved disputes, controversies or Claims." *See id*. (emphasis

supplied by Alamo in its brief). Alamo also notes that paragraph 43.0(B) states the subcontractor

"may" proceed under the "Disputes" section of paragraph 44.0 if it is unsatisfied after the "Claims"

process is completed. *See id*. at 12. Alamo argues that these ambiguities should result in a finding

that the arbitration provision does not apply to its claims, or that arbitration is discretionary and not

mandatory.

 "The construction of an unambiguous contract is a matter of law for the court." *Walker v.*

*Telex Corp.*, 583 P.2d 482, 485 (Okla. 1978); *see Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d

541, 545 (Okla. 2003). Also, whether a contract is ambiguous and requires extrinsic evidence to

clarify the doubt, is also a question of law for the court. *Pitco*, 63 P.3d at 545. "A contract is

ambiguous if it is reasonably susceptible to at least two different constructions." *Pitco*, 63 P.3d at

545-46. The determination of whether a contract is ambiguous is made only *after* application of the

pertinent rules of construction. *See State ex rel. Comm'rs of Land Office v. Butler*, 753 P.2d 1334,

1336-37 (Okla. 1987).

 Oklahoma's statutory rules of construction establish that: the language of a contract governs

its interpretation, if the language is clear and explicit and does not involve an absurdity (Okla. Stat.

tit. 15, §§ 154, 155); a contract is to be taken as a whole, giving effect to every part if reasonably

practicable, each clause helping to interpret the others (*id*. § 157); a contract must receive such an

interpretation as will make it operative, definite, reasonable, and capable of being carried into effect

(*id*. § 159); words of a contract are to be given their ordinary and popular meaning (*id*. § 160); and

a contract may be explained by reference to the circumstances under which it was made, and the

matter to which it relates (*id*. § 163). "The mere fact that the parties disagree or press for a different

construction does not make an agreement ambiguous." *Pitco*, 63 P.3d at 545.

Upon careful consideration of the subcontract, and application of the foregoing principles, the Court finds that the arbitration provision is clear and unambiguous, and that its construction is a matter of law for the Court based solely on the contractual language. Although not a model of clarity, the subcontract plainly requires Alamo to arbitrate claims for which Cape chooses arbitration. The operative provision states: "As to disputes, controversies or Claims between Cape and Subcontractor which remain unresolved after such good faith negotiation [described in the first sentence], Cape shall determine whether they shall be settled by [arbitration] . . . , or through litigation . . . ." *See* Defs.' Renewed Mot. Dism., Ex. 1 [Doc. No. 31-1], Subcontract, attach. C, ¶ 44.0(B). This provision mandates that unresolved disputes or "Claims," as defined by the subcontract (seeking additional money or time for performance), "shall" be resolved by arbitration upon Cape's selection of that means of dispute resolution. In its cross-complaint against Cape, Alamo asserts both contractual "Claims" and other disputes, including allegations that Cape engaged in negligent or fraudulent conduct. *See* Cross-Claim [Doc. No. 7] at 11-12, ¶¶ 27-33. Setting aside for the moment Alamo's contention that the good faith negotiation required by paragraph 44.0(B) is a condition precedent to arbitration (discussed in Part D below), the Court finds that Alamo's effort to create uncertainty from other contractual provisions results in a strained interpretation of the arbitration provision and does not give effect to its clear meaning. The mandatory language of the arbitration provision cannot reasonably be read to say that Alamo may elect <u>not</u> to resolve its claims through arbitration.

For these reasons, the Court rejects Alamo's assertion that it did not agree to arbitration of the claims asserted against Cape in this case.

C.     **Waiver of Enforcement**

Alamo contends that Cape has waived any contractual right to arbitrate this dispute through its pre-litigation conduct, including alleged statements or assurances that certain terms and conditions of the subcontract would not be enforced or that strict compliance would not be required. In support of its waiver argument, Alamo relies on case law holding that contractual conditions may be waived by a party's course of conduct in performing the contract.

Federal law is clear that "the right to arbitration, like any other contract right, can be waived."

*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994) (internal quotation omitted).

> In determining whether a party has waived its right to arbitration, [a federal] court examines several factors:  (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 467-68 (10th Cir. 1988) (quoting *Reid Burton Constr., Inc. v. Carpenters Dist. Council*, 614 F.2d 698, 702 (10th Cir. 1980)); *accord McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998); *Metz*, 39 F.3d at 1489.  Notably, these factors look to whether a party has acted inconsistently with its right to arbitrate, rather than litigate, a particular dispute.  *See Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002).

Upon consideration of these factors in light of the alleged circumstances on which Alamo relies, the Court finds no waiver by Cape of its right to demand arbitration.  Cape responded to Alamo's Cross-Claim by immediately filing a motion for dismissal in favor of arbitration and a stay

of the litigation. Cape did not file a counterclaim, take advantage of judicial procedures, or engage in any delay before seeking a stay of further proceedings. Rather, Alamo's assertion of conduct by Cape that allegedly was inconsistent with its contractual rights involves the subcontract's provisions regarding the "Claims" process and good faith negotiation of unresolved "Claims" and other disputes. The subcontract plainly provides that these procedures would be completed before proceeding with further dispute resolution mechanisms, such as arbitration. Any failure by Cape to follow pre-arbitration procedures is not inconsistent with its right to arbitrate, rather than litigate, unresolved disputes. Accordingly, the Court finds that Alamo has failed to allege a sufficient factual basis to establish a waiver of arbitration.

**D.      Condition Precedent to Performance**

As noted above, the arbitration provision of the subcontract authorized Cape to decide whether to arbitrate or litigate an unresolved controversy after "good faith negotiation," which is mandated by the first sentence of paragraph 44.0 as follows: "the parties shall first seek to resolve [disputes and claims] by good faith negotiation lasting at least ten days involving senior management of the Parties." *See* Defs.' Renewed Mot. Dism., Ex. 1 [Doc. No. 31-1], Subcontract, attach. C, ¶ 44.0(B). Alamo argues that Cape has no right to elect arbitration of this dispute because it failed to satisfy its contractual obligation to engage in this good faith negotiation. Alamo relies on correspondence showing that, after Alamo requested a settlement conference between senior management as provided by paragraph 44.0(B), the parties scheduled a mediation to occur on May 27, 2011, but then Cape cancelled the mediation after Alamo's subcontractors filed this action on May 4, 2011. In response to this argument, Cape asserts that the correspondence presented by Alamo shows the parties were actually engaged in negotiations over an extended period of time, and that a face-to-face mediation was not required to satisfy Cape's duty to negotiate.

Alamo cites no legal authority for its position that Cape's right to demand arbitration was contingent upon the completion of the mediation session that the parties had scheduled to attend. The Court's research reveals that, as a principle of contract law, "parties to an arbitration agreement may make the right to seek arbitration subject to a condition precedent." *See Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 638 (7th Cir. 2002) (applying Indiana law). The arbitration agreement in this case could arguably be read to include such a condition; Cape's right to select arbitration applies to disputes and claims "which remain unresolved after such good faith negotiation," as described in the first sentence of the arbitration provision. *See* Defs.' Renewed Mot. Dism., Ex. 1 [Doc. No. 31-1], Subcontract, attach. C, ¶ 44.0(B).[6] An essential question presented by Alamo's argument and not addressed in its brief, however, is whether Cape's satisfaction of a condition precedent would be a "gateway" matter to be decided by the Court, rather than an arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

Under federal law, a gateway dispute for judicial determination raises "a question of arbitrability," such as "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id*. All other issues are presumptively reserved for arbitration, as explained by the Supreme Court:

> [T]he Court has found the phrase "question of arbitrability" *not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter. Thus "'procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively *not* for the judge, but for an arbitrator, to decide. *John Wiley* [*& Sons, Inc. v. Livingston*, 376 U.S. 543,] at 557 [(1964)] (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to

---

[6] However, the contract in *Welborn* was found not to establish a condition precedent to arbitration even though it contained a dispute resolution provision similar to the one in this case, requiring good faith negotiation and providing for arbitration "[i]n the event the parties are unable to resolve such dispute within ten (10) days of entering into negotiations." *See Welborn*, 301 F.3d at 636.

arbitration).    So, too, the presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital* [*v. Mercury Constr. Corp*., 460 U.S. 1], at 24-25 [(1983)]. Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to "incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]," states that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp. 2002).

*Id*. at 84-85 (emphasis in original).

Recently, a federal appellate court addressed an issue similar to the one presented in this case.  In *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367 (1st Cir. 2011), the First Circuit concluded that the parties' disagreement over whether one party had complied with an alleged condition precedent to arbitration, which required that the parties engage in good faith negotiation prior to arbitration, was an issue to be decided by the arbitrator.  The written agreement in that case contained a "Dispute Resolution/Arbitration" provision stating that the parties "shall use good faith negotiation to resolve any dispute that may arise under this Agreement.  In the event [the parties] cannot reach agreement on any issue, such issue will be settled by binding arbitration . . . ."  *Id*. at 371.  Addressing arguments that the provision constituted a condition precedent to arbitration that had not been satisfied, the court of appeals assumed that the arbitration clause established a pre-condition to arbitration but found that the party resisting arbitration had "not rebutted the presumption that the arbitrator should decide whether the parties complied with such a procedural pre-requisite to arbitration."  *Id*. at 383 (citing *Howsam*, 537 U.S. at 84; *John Wiley & Sons*, 376 U.S. at 557-59).

Under the circumstances of this case, the Court reaches the same conclusion:  an arbitrator should decide whether Cape has satisfied or waived any procedural preconditions to arbitration of this dispute.  The Court finds this result to be particularly appropriate here because Alamo's

arguments in opposition to arbitration also bear on the merits of the parties' dispute.  That is, Alamo

alleges that Cape engaged in a course of conduct that both failed to satisfy contractual obligations

and misled Alamo to its detriment, particularly with regard to claim processing and dispute

resolution.  Further, the specific condition on which Alamo relies to avoid arbitration – good faith

negotiation – is a phrase subject to interpretation and application of relevant facts determined by a

fact-finder.  For example, Alamo's argument that the scheduled mediation must be completed to

satisfy the negotiation requirement is not based on any term of the contract.

For these reasons, the Court finds that Alamo has failed to establish the parties' arbitration

agreement is unenforceable due to an unsatisfied condition precedent.

**E.      Dismissal or Stay of the Litigation**

Cape's request for a dismissal, rather than a stay, of the action is based on the proposition

that all claims will be resolved through arbitration.  *See*, *e.g.*, *Choice Hotels Int'l, Inc. v. BSR*

*Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of

[9 U.S.C.] § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit

are arbitrable.") (citing *Alford v. Dean Witter Reynolds, Inc*., 975 F.2d 1161, 1164 (5th Cir. 1992)).

However, the Federal Arbitration Act expressly authorizes the stay of an action until "arbitration has

been had in accordance with the terms of the agreement, providing the applicant for the stay is not

in default in proceeding with such arbitration." *See* 9 U.S.C. § 3.  A stay is particularly appropriate

when a case involves both arbitrable and nonarbitrable issues and the resolution of arbitrable claims

may have a preclusive effect on claims that remain subject to litigation.  *Riley Mfg. Co. v. Anchor*

*Glass Container Corp*.,157 F.3d 775, 785 (10th Cir. 1998).  In this case, in addition to claims against

Cape, Alamo also asserts claims against the surety, who was not a signatory to the arbitration

agreement, and has asserted claims against individual defendants, who have been granted a dismissal

with leave for Alamo to amend.  Under these circumstances, the Court finds that this case should be stayed, rather than dismissed, pending the completion of an arbitration proceeding timely initiated in accordance with terms of the subcontract.

### Conclusion

Because Alamo has not demonstrated that the arbitration agreement in its subcontract with Cape is unenforceable, and because no contention is made that Cape is in default in any arbitration proceeding, the Court finds that this case should be stayed pending Alamo's pursuit of its claims in an appropriate arbitral forum.

IT IS THEREFORE ORDERED that the Renewed Motion of Defendants to Dismiss the Cross-Claims of Alamo Environmental, Inc. in Favor of Arbitration and to Enter a Stay of This Action [Doc. No. 31] is GRANTED in part and DENIED in part, as set forth herein.

IT IS FURTHER ORDERED that this action is stayed pending the arbitration of all claims brought by Plaintiff Alamo Environmental, Inc. d/b/a Alamo 1 against Defendant Cape Environmental Management, Inc.  By separate order, the case will be administratively closed while the stay remains in effect.

IT IS SO ORDERED this 27th day of December, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE